IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
JOSEPH KENNARD SHELTON,        )
                               )
          Petitioner,          )
                               )         1:14CV966
     v.                        )         1:11CR397-1
                               )
UNITED STATES OF AMERICA,      )
                               )
          Respondent.          )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Petitioner Joseph Kennard Shelton ("Petitioner") has brought a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, along with an accompanying memorandum and a supplement. (Docs. 51, 52, 54.)[1] The Government has filed a response (Doc. 59), and Petitioner has filed a reply and multiple supplements to that reply (Docs. 63, 64, 65). The matter is now ripe for a ruling, and for the following reasons, will be dismissed. See Rule 8, Rules Governing Section 2255 Proceedings.

I. **BACKGROUND**

Petitioner was indicted on counts of bank robbery and armed bank robbery for his July 18, 2011 robbery of the Bank of North

---

[1] Unless otherwise noted, this and all further citations to the record are to the docket in the criminal case (1:11CR397-1).

Carolina at 112 North Elm Street, Greensboro, North Carolina. (See Indictment (Doc. 1).) Petitioner unsuccessfully challenged the admissibility of certain evidence through a motion to suppress and unsuccessfully requested that this court accept a conditional plea. (See Mem. Op. & Order (Doc. 22) at 18; Trial Tr. (Doc. 41) at 8.) Petitioner then waived his right to a jury trial, (see Waiver of Trial by Jury (Doc. 26)), and at the close of evidence, this court found Petitioner guilty of both counts of the Indictment. (Trial Tr. (Doc. 41) at 141.)

At the sentencing hearing, Petitioner faced a guideline imprisonment range of 262 to 300 months. (Sentencing Hr'g Tr. (Doc. 48) at 3.) Petitioner's counsel presented evidence of Petitioner's mental illness, military service, and the fact that Petitioner accepted responsibility to some degree. (See id. at 5-16.) Based on these factors, this court ultimately varied from the applicable guideline imprisonment range and sentenced Petitioner to 156 months as to Count 2 - the term of imprisonment as to Count 1 merged because Count 1 is a lesser included offense. (See id. at 61-64; J. (Doc. 35) at 2.)

Following an unsuccessful appeal based on the denial of the motion to suppress, United States v. Shelton, 531 Fed. Appx. 400, 401 (4th Cir. 2013), Petitioner timely filed his current Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. ("Petition" (Doc. 51).) In his Petition, Petitioner

sets out four grounds alleging ineffective assistance of counsel. First, Petitioner contends that his counsel was deficient in not requesting a competency hearing. (Id. at 4.)[2] Second, Petitioner claims that counsel was deficient in failing to file a motion to suppress evidence of both in-court and out-of-court identifications of Petitioner. (Id. at 5.) Third, Petitioner alleges that counsel "failed to prepare a defense." (Id. at 7.) Fourth, Petitioner claims that counsel "failed to file [a] motion for discovery." (Id. at 8.)

## II. LEGAL STANDARD

All four of Petitioner's alleged grounds for relief are claims of ineffective assistance of counsel. In order to prove ineffective assistance of counsel, a petitioner must first establish that his attorney's performance fell below a reasonable standard for defense attorneys, and second, that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668 (1984). A petitioner bears the burden of affirmatively showing deficient performance. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). To establish prejudice, Petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland,

---

[2] All citations to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF

-3-

466 U.S. at 694. Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. <u>See</u> <u>Nickerson v. Lee</u>, 971 F.2d 1125, 1136 (4th Cir. 1992) (recognizing that to obtain an evidentiary hearing a habeas petitioner must come forward with some evidence that the claim might have merit), <u>abrog'n on other grounds recogn'd</u>, <u>Yeatts v. Angelone</u>, 166 F.3d 255 (4th Cir. 1999).

### III. <u>ANALYSIS</u>

#### A. <u>Failure to Request a Competency Hearing</u>

Petitioner first charges ineffective assistance of counsel based on his counsel's failure to request a competency hearing. (<u>See</u> Pet'r's Mem. of Law in Supp. of Mot. Pursuant to Title 28 U.S.C. § 2255 ("Pet'r's Mem.") (Doc. 52) at 12.) There appears to be no question that Petitioner has significant problems with mental illness, including "bipolar disorder with schizoid effects" and post-traumatic stress disorder ("PTSD"). (<u>See</u> <u>id.</u> at 6.) Counsel was aware of Petitioner's mental illness from his first interaction with Petitioner, and counsel advised this court of Petitioner's mental illness. (<u>See</u> <u>id.</u>; Government's Resp., Attach. A, Aff. of Louis C. Allen ("Allen Aff.") (Doc. 59-1) at 1.) However, counsel did not make a motion for a competency hearing. Nonetheless, this court finds that Petitioner has not identified a basis for finding counsel's performance deficient.

-4-

As Petitioner recognizes, a defendant is competent to stand trial if he can understand the proceedings against him and if he is able to assist in preparing his defense. (See Pet'r's Mem. (Doc. 52) at 13 (citing Drope v. Missouri, 420 U.S. 162, 171 (1975)).) However, the court need not order a competency hearing unless there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." See 18 U.S.C. § 4241(a).

In this case, despite counsel's knowledge of Petitioner's mental illness, counsel devised a strategy that was not based on Petitioner's alleged incompetency, but was based instead on contesting the admissibility of evidence, accepting responsibility for the bank robbery, using Petitioner's acceptance of responsibility and mental illness to argue for a downward variance at sentencing, and preserving the evidentiary issues for appeal. (See Allen Aff. (Doc. 59-1) at 1-3.) Counsel explains that Petitioner's "possession of the bank bag with the proceeds from the robbery in his pants several hundred yards from the bank and within minutes of the robbery" made acquittal "a very long shot." (See id. at 2.) Ordinarily, this court will not question matters of trial strategy, so long as

-5-

they are reasonable.  See United States v. Mason, 774 F.3d 824, 830 (4th Cir. 2014) (noting attorneys are "permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success").  Given the evidence against Petitioner, this court finds the strategy pursued by counsel to be a reasonable trial strategy.[3]

Moreover, even if counsel was deficient in not making a motion for a competency hearing, Petitioner has not reasonably alleged that he was prejudiced by this decision.  During the trial, this court found that there was no reasonable basis for finding that Petitioner was incompetent.  (See Trial Tr. (Doc. 41) at 28.)  Although Petitioner did not move for a competency hearing, counsel did advise this court of Petitioner's mental

---

[3] Regarding the strategy pursued by Petitioner's counsel, Petitioner now contends that he "was scared and confused by what [counsel] was [suggesting] they do" and that he "did not agree to a conditional plea or accept responsibility [for] robbing the bank" but instead "wanted to go to trial to prove his innocence."  (Pet'r's Mem. (Doc. 52) at 8.)  However, in his affidavit, counsel contends that Petitioner "understood the rationale for proceeding this way and approved of it."  (See Allen Aff (Doc. 59-1) at 2.)  Moreover, during this court's questioning of Petitioner, Petitioner indicated under oath that he and his counsel had "worked carefully and closely together," that he understood the possible defenses he might have to the charges against him, and that he understood the strategy laid out in counsel's opening argument. (See Trial Tr. (Doc. 41) at 19, 21-28.)  Ultimately, the allegations made by Petitioner in his Memorandum completely contradict Petitioner's statements under oath to this court, along with the forensic psychological evaluation conducted before sentencing that indicated Petitioner was compliant with and having a good response to his medication at the time of trial.  (See Def.'s Sentencing Position Paper, Attach. A, Forensic Psychiatric Evaluation (Doc. 32-1) at 9-10.)

-6-

illness so that this court could question Petitioner regarding his ability to understand and proceed. (See id. at 17.) After investigating the matter, this court ultimately concluded that Petitioner was "competent and capable of making the decision with respect to whether to proceed to trial and, if so, what defense to assert and whether to or not to . . . follow the advice and counsel of his attorney." (See id. at 28.) Had counsel moved for a competency hearing, this court would have used the same rationale to deny such a hearing. Petitioner contends that this court's inquiry "dealt more with [his] ability to understand," and he is correct on that point. Pursuant to § 4241(a), whether or not Petitioner was able to understand the proceedings was a fundamental aspect of this court's inquiry. This court did inquire as to whether Petitioner understood and agreed with the strategy that counsel presented to this court, and Petitioner said that he did. (Id.)

Petitioner reports in his pleadings that he suffered auditory hallucinations that affected his decisions during the bench trial. Counsel did not identify auditory hallucinations as being one of Petitioner's mental illnesses, and Petitioner claims he was unable to focus on this court's questions due to such auditory hallucinations during this court's inquiry. (See Pet'r's Mem. (Doc. 52) at 6-7.) However, Petitioner does not report telling counsel and he did not tell this court that he

was having difficulty understanding counsel's or this court's questions based on his auditory hallucinations.  Further, there is nothing in the record that would have given counsel or this court any indication that Petitioner was suffering from auditory hallucinations.  Petitioner indicated during the trial that he was currently taking medications and that his medications did not affect his ability to understand the proceedings.  (See Trial Tr. (Doc. 41) at 21.)  Furthermore, although Petitioner asked for clarification on several occasions, he was responsive to this court's questions and even asked what this court considered an insightful question concerning the Government's burden of proof.  (See id. at 27-28.)  Therefore, this court finds that Petitioner was not deficient in failing to investigate or advise this court of Petitioner's auditory hallucinations.

For these reasons, this court finds no basis upon which Petitioner's counsel could be found to have rendered ineffective assistance based on Petitioner's alleged incompetency, and considering the determination this court made as to Petitioner's competency during the bench trial, this court finds in the alternative that Petitioner has not been prejudiced by counsel's failure to request a competency hearing.  Therefore, this claim is dismissed.

Petitioner cites Becton v. Barnett for his argument that this court must hold an evidentiary hearing to determine if counsel was deficient in failing to request a competency hearing.  (See Pet'r's Suppl. Mot. to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. Sec. 2255 & Mem. of Law in Supp. ("Pet'r's Suppl.") (Doc. 54) at 16 (citing Becton v. Barnett, 920 F.2d 1190 (4th Cir. 1990)).)  However, Petitioner's condition is not like that of the defendant in Becton, and Petitioner's offense conduct would not be considered "bizarre" or "senseless" when compared to defendant's conduct in Becton.  See Becton, 920 F.2d at 1192-94.  In Becton, the "bizarre" and "senseless" acts of the defendant made it necessary for counsel to investigate defendant's mental competency and made it improper for the court to summarily dismiss that defendant's habeas petition based on the argument.  See id.  Yet, without those same indicia of mental incompetency, this court can find that Petitioner's counsel was not deficient without conducting an evidentiary hearing.  Moreover, counsel in Becton offered no defense on that defendant's behalf, as no defense was available to defendant except for possibly an insanity defense.  (See id. at 1194.)  Here, counsel vigorously pursued a defense based on suppression of evidence, supporting this court's conclusion that counsel was effective.

Thus, because Petitioner makes no allegations that would show he had a colorable insanity defense or argument of incompetency and because counsel pursued a viable defense apart from insanity, this court finds Becton inapposite. And without a colorable claim of ineffectiveness based on his competency, this court will dismiss Petitioner's claim without an evidentiary hearing.

**B.     Failure to Argue for Suppression of Identification**

Petitioner also charges ineffective assistance of counsel based on counsel's "fail[ure] to file [a] motion to suppress the out-of-court and in-court identification" of Petitioner by the bank tellers who testified at his trial, because those identifications were "tainted." (See Pet'r's Mem. (Doc. 52) at 34.) Counsel initially moved to suppress the "show-up" identifications of Petitioner - both as being unconstitutional by themselves as well as being fruits of an unconstitutional stop. (See Mem. in Supp. of Mot. to Suppress (Doc. 11) at 5-8.) However, counsel did not pursue his argument on the unconstitutionality of the show-up identification at the suppression hearing, focusing instead on the constitutionality of law enforcement officer's decision to stop and detain Petitioner. (See Suppression Hr'g Tr. (Doc. 4) at 3; Mem. Op. & Order (Doc. 40) at 8 n.7.)

-10-

Case 1:11-cr-00397-WO   Document 67   Filed 08/05/15   Page 10 of 20

To the extent Petitioner challenges the constitutionality of the stop and subsequent detention of Petitioner or argues that the identification is an improper "fruit of the poisonous tree," those issues may not be re-litigated as they were adjudicated in deciding the motion to suppress, were preserved based on the trial strategy followed by defense counsel, and were considered on appeal. See Shelton, 531 Fed. Appx. at 400-01; (see also Mem. Op. & Order (Doc. 22) at 8 n.7, 18.) Therefore, this court will not reconsider any of these issues. See United States v. Boeckenhaupt, 537 F.2d 1182, 1183 (4th Cir. 1976) (per curiam).

To the extent Petitioner challenges counsel's decision not to pursue the argument that the identifications should have been suppressed, that argument fails on the merits because Petitioner was ultimately not prejudiced by counsel's decision. This court, at trial, considered the suggestiveness of the identification procedures but ultimately found that, based on the totality of the circumstances, the out-of-court and in-court identifications of Petitioner by Denyse Scott were reliable.

-11-

Case 1:11-cr-00397-WO Document 67 Filed 08/05/15 Page 11 of 20

(See Trial Tr. (Doc. 41) at 130-31, 139-40.)[4] Moreover, the other bank teller, Dani Catechis, who was less confident in her identification of Petitioner was not asked to identify Petitioner during the trial, rendering any argument concerning suppression of any identification partially moot. (See id. at 31-62.)

Even assuming that there is an argument that counsel could possibly have suppressed the out-of-court identification of Ms. Catechis, this argument also fails. Suppression of Ms. Catechis's identification would not have changed the fact that Petitioner was arrested or changed the outcome of the trial, given the identification of Petitioner by Ms. Scott and other strong evidence against Petitioner, specifically, Petitioner having the bank bag and money on his person; the clothes and gun used during the robbery being found nearby; and Petitioner's detention by law enforcement officers near the bank within three

---

[4] To determine if an identification was reliable, in spite of impermissibly suggestive identification procedures, a court must examine: (1) the witness's opportunity to view the suspect at the time of the crime; (2) the witness's degree of attention at the time; (3) the accuracy of the witness's initial description of the suspect; (4) the witness's level of certainty in making the identification; and (5) the length of time between the crime and the identification. United States v. Saunders, 501 F. 3d 384, 391 (4th Cir. 2007). This court agrees with the analysis in the Government's Response that Denyse Scott's identification satisfies all five of these criteria. (See Government's Resp. (Doc. 59) at 12-13.)

-12-

Case 1:11-cr-00397-WO   Document 67   Filed 08/05/15   Page 12 of 20

to ten minutes of the robbery. (See Trial Tr. (Doc. 40) at 137-40.)

Thus, it was a reasonable strategic decision for Petitioner to abandon the identification argument at the suppression hearing in favor of stronger arguments, and based on all of the other evidence against Petitioner, Petitioner was not prejudiced by the decision to abandon this argument. Accordingly, Petitioner's second ground is dismissed.

### C. **Failure to Prepare a Defense**

Petitioner contends that counsel was also ineffective in "fail[ing] to mount a credible defense." (See Pet'r's Suppl. (Doc. 54) at 12.) In expanding on this ground, Petitioner challenges the strategy that he and his counsel pursued of not "rais[ing] the various mental competency issues" at trial or arguing factual innocence, but instead, admitting guilt, trying to suppress evidence, seeking to enter a conditional plea, and challenging the admissibility of the evidence on appeal. (See id. at 12-14.)

There are several reasons why this court finds that this argument is unavailing. First, aspects of the argument are conclusory. Petitioner has alleged that counsel did not conduct "proper discovery" or "proper investigation." (See Pet'r's Suppl. (Doc. 54) at 12-13.) But besides pointing out issues that would suggest law enforcement officers did not have

-13-

reasonable suspicion to stop Petitioner - an issue raised by counsel in the motion to suppress - Petitioner does not explain what discovery or investigation counsel should have done or how the fruits of that investigation might have helped lead to a different result at trial. (See id.) Similarly, Petitioner suggests counsel should have ordered DNA testing of the "clothing worn by the robber to see if Petitioner's DNA was on that clothing." (See id. at 13.) Yet, Petitioner does not go so far as to say that the DNA testing would have exonerated him. Instead, Petitioner merely asserts that DNA testing should have been done. As a result, this argument, as well as Petitioner's other arguments concerning counsel's investigation of the facts, are conclusory and cannot serve as a basis for relief.

Second, aspects of Petitioner's claims do not have a reasonable basis in fact. For instance, Petitioner challenges the cross-examination that counsel conducted as to Dani Catechis, the bank teller who identified Petitioner out-of-court but was only 60 percent sure he was the person who had robbed the bank. (See id.) Petitioner argues that her identification was defective. But as shown above, Ms. Catechis did not identify Petitioner in court, counsel cross-examined her, and this court recognized that Ms. Catechis was only 60 percent confident in her out-of-court identification in making its findings. (See Trial Tr. (Doc. 41) at 60-61, 139). Therefore,

Petitioner's argument that counsel should have challenged her identification of Petitioner does not align with the facts, because counsel did in fact challenge her identification of Petitioner.  Additionally, Petitioner argues that counsel should have more vigorously challenged inconsistencies as to the description of the suspect at trial.  (See Pet'r's Suppl. (Doc. 54) at 13.)  These issues had been argued at the suppression hearing, (see, e.g., Suppression Hr'g Tr. (Doc. 40) at 42-43, 51-52 (cross-examination of Officer Price); id. at 78-81 (counsel's discussion with the court)), and counsel raised those issues again at trial.  (See Trial Tr. (Doc. 41) at 95 (cross-examination of Officer Price).)  Therefore, any argument that counsel did not pursue these arguments at trial do not align with the clear record from the trial transcript.

Third, Petitioner does not show that he was prejudiced by any of the remaining allegations of this claim.  Petitioner argues that counsel failed to investigate or raise his "various mental competency issues."  (See Pet'r's Suppl. (Doc. 54) at 12.)  However, even if counsel did fail to conduct an adequate investigation, this court ultimately considered whether Petitioner had the specific intent to commit the bank robbery and found that Petitioner did, noting the preparation that took place in devising "a pretty elaborate effort at surreptitiously fleeing the scene of the robbery by the change of clothes."

(See Trial Tr. (Doc. 41) at 140.)  This court made this finding with knowledge of Petitioner's mental health issues (see id.), and Petitioner has offered no specific allegation of how further information on his mental health would have affected this outcome.

Moreover, this court finds Petitioner was not prejudiced by any of these alleged deficiencies because counsel was adhering to a valid trial strategy in choosing to raise certain arguments but not raise others.  Counsel explains that he was attempting to preserve an argument at sentencing that Petitioner deserved a variant sentence because he had accepted responsibility, even though Petitioner had not pled guilty.  (See Allen Aff. (Doc. 59-1) at 2-3.)  Counsel did in fact make this argument during the sentencing hearing.  (Sentencing Hr'g Tr. (Doc. 42) at 64.) The court accepted counsel's argument, crediting Petitioner for being "willing to waive a jury and proceed expeditiously through the determination of guilt."  (Id. at 64.)  Had counsel vigorously argued that Petitioner did not rob the bank, counsel would not have been able to make this argument for a variant sentence.  Combined with Petitioner's mental health, his age, and his military service, this court relied upon the acceptance of responsibility in (1) varying from a guideline imprisonment range of 262 to 300 months to a guideline imprisonment range of 151 to 188 months and (2) ultimately sentencing Petitioner to

156 months.  (See id. at 3, 31, 61-64.)  Counsel says that Petitioner "understood the rationale for proceeding this way and approved of it" (Allen Aff. (Doc. 59-1) at 2), and considering the evidence against Petitioner, this court finds that the strategy was reasonable.  This court will not allow Petitioner to second guess that strategic decision now.

Therefore, for all of these reasons, Petitioner's third ground in his Petition will be dismissed.

**D.     Failure to Make a Motion for Discovery**

Finally, Petitioner contends that counsel was ineffective because he "failed to file a motion for discovery" or "seek exculpatory evidence from the prosecution under Brady v. Maryland."  (Petition (Doc. 51) at 8; Pet'r's Suppl. (Doc. 54) at 14.)  This claim is totally without merit.

As counsel explains, this case "proceeded under the Open File Policy in effect in this district."  (See Allen Aff. (Doc. 59-1) at 3.)  Under this open file policy and under the mandate of Brady v. Maryland, the United States Attorney's office made its file open to counsel, and it was required to disclose any exculpatory evidence.  In fact, to file a discovery motion in this district, counsel must certify that he "has fully reviewed the government's case file before bringing the [discovery] motion or that such file is not available for counsel's review." LCrR16.1.  This ensures that unnecessary discovery motions are

-17-

not filed.  Petitioner has made no specific allegation of evidence in the Government's possession that would have assisted Petitioner, nor has Petitioner made a specific allegation of a Brady violation.  Accordingly, this claim is without merit.

Petitioner again raises allegations about DNA or fingerprint evidence that counsel should have pursued.  However, again, Petitioner does not allege how DNA or fingerprint evidence would have exonerated him, and without this important piece showing how such evidence might have changed the result in Petitioner's trial, he cannot show prejudice.  Therefore, this claim will also be dismissed.

**IV.   PETITIONER'S MOTION FOR ATTORNEY FEES**

Petitioner also makes a request for attorney's fees in this matter.  (Pet'r's Petition for Attorney Fees to be Paid (Doc. 66) at 1; see also Pet'r's Mem. of Law in Supp. of Mot. Pursuant to 18 U.S.C. § 3006A(e)(1) Representation and Financially Unable to Obtain an Adequate Defense (Doc. 63) at 6 (arguing Petitioner is entitled to attorney's fees because the Federal Public Defender's office "has been compromised and is unwilling to provide conflict-free representation").)  However, Petitioner is not entitled to counsel for the purposes of pursuing this Petition. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); United States v. Williamson, 706 F.3d 405, 416 (4th Cir. 2013); Hunt v. Nuth, 57 F.3d 1327, 1340 (4th Cir. 1995).  None of the

statutes or cases cited by Petitioner provide otherwise. See 18 U.S.C. § 3006A(a)(1) (excluding habeas petitions from the list of proceedings where representation or investigative services must be provided to defendants unable to pay); Smith v. Bennett, 365 U.S. 708, 710 (1961) (finding it unconstitutional to require indigent prisoners to pay a fee before filing a habeas petition). Because Petitioner is not entitled to representation in this matter and because this court has found that all of Petitioner's claims lack merit, this court will not pay Petitioner's requested attorney's fees. Moreover, this court notes David Jay Bernstein of the Federal Legal Center, Petitioner's apparent counsel, is not admitted to this court and is not allowed to represent clients in this court. See Clay v. United States, No. 1:11CR304-1, 2015 WL 902052, at *3 n.2 (M.D.N.C. Mar. 3, 2015). Therefore, Petitioner's Petition for Attorney Fees will be denied.

**V. CONCLUSION**

**IT IS THEREFORE ORDERED** that Petitioner's Motion Under § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 51) is **DENIED** and that this case is **DISMISSED** without an evidentiary hearing.

**IT IS FURTHER ORDERED** that Petitioner's Petition for Attorney Fees (Doc. 66) is **DENIED**.

A judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order. Finding no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction, nor a debatable procedural ruling, a certificate of appealability is not issued.

This the 5th day of August, 2015.

／s／ William L. Osteen, Jr.
United States District Judge

-20-

Case 1:11-cr-00397-WO   Document 67   Filed 08/05/15   Page 20 of 20